# 12-4422-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

→→ ←←

THOMAS BOYD, HUMBERTO MENESES,

*Plaintiffs,*

*and*

JOAN GRANT BOYD, SYBIL TAYLOR, RANDA JONES, TONYA WARTERS,
ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellants,*

*v.*

J.E. ROBERT CO., INC., JER REVENUE SERVICES, LLC,
NYCTL 1996-1 TRUST, NYCTL 1997-1 TRUST, NYCTL 1997-2 TRUST,
NYCTL 1998-1 TRUST, NYCTL 1999-1 TRUST,

*Defendants-Appellees.*

_____

*On Appeal from the United States District Court
for the Eastern District of New York (Brooklyn)*

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

PAUL STUART GROBMAN, ESQ.
555 Fifth Avenue, 17th Floor
New York, New York 10017
212-983-5880

LAW OFFICES OF
 CURTIS V. TRINKO, LLP
16 West 46th Street, 7th Floor
New York, New York 10036
212-490-9550

*Attorneys for Plaintiffs-Appellants*

## TABLE OF CONTENTS                                    Page

TABLE OF AUTHORITIES ……………………...………………  i

PRELIMINARY STATEMENT ………………………………….  1

POINT I
THE LOWER COURT'S DISMISSAL OF
APPELLANTS' FDCPA CLAIMS SHOULD BE REVERSED ………  5

   1. The Appellants' Purchases of Water And Sewer Services From
      The City Are Clearly "Transactions" Subject To
      The FDCPA ……………………...……………………………  5

   2. Appellees' Collection of Unauthorized Fees and Expenses Is Not
      Insulated from FDCPA Scrutiny Merely Because it Occurred While
      Foreclosure Actions Which Did Not Seek Personal Judgments
      Against Appellants Were Pending …………………………………  8

   3. Appellants Violated The FDCPA By Misrepresenting That Legal
      Expenses Were Due And Owing When The Statutory Prerequisites
      For The Imposition Of Such Fees Had Yet To Occur ……………  10

   4. Appellants Purchased Water and Sewer Services from the City, Not
      a Tax Lien, So Appellees' Attempt to Define the "Transaction" At
      Issue as one Involving Bundled Tax, Water and Sewer Obligations
      Is Baseless ………………………………………………………..  15

   5. The Fact That The Appellees Sent Payoff Demands To Appellant's
      Counsel Is Irrelevant To Whether Appellee's Collected Amounts
      From Appellants Which Were Forbidden Under Section 1692f(1) ..  18

POINT II
THE 1998-1 TRUST IS SUBJECT TO THE FDCPA …………………….  22

CONCLUSION ………………………………………………………  25

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

Aliibrandi v. Fin. Outsourcing Serv. Inc., 333 F.3d 82 (2d Cir. 2003) …        23

Allen v. LaSalle Bank, N.A., 629 F.3d 364 (3rd Cir. 2011) ……………..     18-20

Bailey v. Security Nat'l Servicing Corp., 154 F.3d 384 (7th Cir. 1998)…        22

Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322
(7th Cir. 1997) ……………………………………………………………………            9

Beggs v. Rossi, 145 F.3d 511 (2d Cir. 1998) ……………………………           3, 5

Birster v. American Home Mortgage Servicing, Inc., 481 F. App'x 579
(11th Cir. 2012) ………………………………………………………………..            9

Coleman v. Golkin, Bomback & Co., 562 F.2d 166 (2d Cir. 1977) ……         25

Evory v. RJM Acqisitions Funding, LLC, 505 F.3d 769 (7th Cir. 2007) ..       18

Farber v. NP Funding II L.P., 1997 U.S. Dist. Lexis 21245(E.D.N.Y.
1997) ………………………………………………………………….…            23, 24

Fein, Such, Kahn & Sheppard, PC v. Allen, 132 S. Ct. 1141 (2012) …..        20

Fields v. Wilbur Law Firm, 383 F.3d 562 (7th Cir. 2004) ………………          12

FTC v. Check Investors, Inc., 502 F.3d 159 (7th Cir. 2007) …………....         24

Gionis v. Javitch, Block & Rathbone, 2007 U.S. App. Lexis 14054 (6th
Cir. 2007) ………………………………..…………………………………            12

Glazer v. Chase Home Finance, LLC, 704 F.3d 453 (6th Cir. 2013) ……          8

Golden Pacific Bancorp v. FDIC, 273 F.3d 509 (2d Cir. 2001) ………..          10

Goswami v. American Collections Ent., Inc., 377 F.3d 488 (5th Cir.
2004) …………………………………………………………………………            11

**Cases**                                                                    **Page**

Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC, 698 F.3d
290 (6th Cir. 2012) …………………………………………………    6, 16

ISCA Enterprises v. City of New York, 77 N.Y.2d 688, 569 N.Y.S.2d
927 (N.Y. 1991) ………………………………………………………..    22

Jerman v. Carlisle, 130 S. Ct. 1605 (2010) …………………………...    18

Kaltenbach v. Richards, 464 F.3d 524 (5th Cir. 2006) ..…………………    8

Kinel v. Sherman Acquisition LP, 2006 U.S. Dist. Lexis 97073,
(S.D.N.Y. 2006) ………………………….………………………………..    23

Kropelnick v. Siegel, 290 F.3d 118 (2d Cir. 2002) ……...………………    17, 18

LFG Realty Co. v. Bank Of New York, 31 Misc.3d 1217a (Kings Co.
Sup. Ct. 2011) …..…………………………………………………………    11

LFJ Realty Co. v. NYCTL 1996-1 Trust, 31 Misc.3d (Kings Co. Sup.
Ct. 2011) ..…………………………………………………………………    10

Ladick v. Van Gemert, 146 F.3d 1205 (10th Cir. 1998) ………………    7

Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, 214 F.3d 872 (7th
Cir. 2000) ..……………………………………………………………………    16

McCollough v. Johnson, Rodenberg & Lauinger, 637 F.3d 939
(9th Cir. 2011) …………………………………………………………..    10

Montgomery v. Huntington Bank, 346 F.3d 693 (6th Cir. 2003) ………    8

Newman v. Boehm, Pearlstein & Bright, Ltd., 119 F.3d 477 (7th Cir.
1997) ………………………………………………………………………    7

Ogbin v. Feib Such, P.C., 2011 U.S. App. Lexis 3499 (3rd Cir. 2011) ....    12, 19

**Cases**                                                                                    **Page**

Oliphant v. Simbboski, 2005 WL 75605 (D. Conn. 2005) ……………....    12, 14

Piper v. Portnoff Law Ass., 396 F.3d (3rd Cir. 2005) …………………..     6, 7

Pollice v. National Tax Funding, L.P., 225 F.3d 379 (3rd Cir. 2000) …...   16, 21, 23

Sayyed v. Wolproff & Abramson, 485 F.3d 226 (4th Cir. 2007) ………..    Passim

Shula v. Lawent, 359 F.3d 489 (7th Cir. 2004) ……………...………..    13, 14

Shapiro v. Riddle & Ass., 240 F. Supp.2d 287 (S.D.N.Y. 2003), aff'd,
351 F.3d 63 (2d Cir. 2003) ……………………………………………...       15

Singer v. Pierce & Associates, 383 F.3d 596 (7th Cir. 2004) …..………..     12

Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991 (7th Cir. 2003) ……….     19

Veech v. Sheeks, 316 F.3d 690 (7th Cir. 2003) …..…………………….     14

Wadlington v. Credit Acceptance Corp., 76 F.3d 103 (6th Cir. 1996) ….     22

Wolpoff v. Abramson, LLP, 321 F.3d 292 (2d Cir. 2003) ..……………..     12

Zirrogiannis v. Dreambuilder Investments, LLC, 2011 U.S. Dist. Lexis
48982 (E.D.N.Y. 2011) …..…………………………………………     21

## **Statutes**

15 U.S.C. §1692a …………………………………………….... 15, 24

15 U.S.C. §1692e ……………………………………………... 17, 18

15 U.S.C. §1692f ……………………………………………... Passim

28 U.S.C. §1367(c) …………………………………………....... 25

53 Fed.Reg. 50097 (Dec. 13, 1988) ………………………….. 8

New York Public Authority Law §1045-j(5) …………………… 7

CPLR § 8301(3) ……………………………………………… 12

NYC Admin. Code, §11-320 …………………………………… 22

NYC Admin. Code, §11-332 …………………………………… 11

NYC Admin. Code, §11-335 …………………………………… 7, 12

NYC Admin. Code, §11-338 …………………………………… 12

NYC Admin. Code, §11-354 …………………………………… 22

NYC Admin. Code, §11-404[a] ………………………………… 22

## PRELIMINARY STATEMENT

Plaintiff-Appellants Joan Grant Boyd ("Boyd") and Randa Jones ("Jones") submit this Reply Brief in further support of their appeal of the decision granting summary judgment to Appellees-Defendants J.E. Robert Co., JER Revenue Services, LLC (hereinafter "JER"), and the NYCTL 1996-1, 1997-1, 1997-2, 1998-1 and 1999-1 Trusts (hereinafter "the NYCTL Trusts") on their claims under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("the FDCPA").

In their briefs, neither the NYCTL Trusts nor JER challenge the Magistrate Judge's finding below that the evidentiary record supported a conclusion that Appellees charged the Appellants for attorneys' fees and expenses "to which outside counsel were not entitled" and "for services that did not occur." (Order, Special Appendix (hereinafter "SPA") at SPA33-34, SPA96.) Nor do either of the Appellees dispute the fact that they charged Appellants for attorneys' and paralegal fees at rates which were fifty-five ($55.00) and sixty ($60.00) dollars per hour above what they themselves could be charged under their Retainer Agreements with law firms, and for numerous expenses which were prohibited under the Retainer Agreements as

well. (See Brief for Appellants at 11-13; SPA26.)[1]  Finally, neither the

NYCTL Trusts nor JER dispute the fact that – under  §11-335 of the New

York City Administrative Code – legal disbursements like those which were

demanded and collected from the Appellants are not owed unless there has

been both a judgment of foreclosure and award of such disbursements,

neither of which happened in the foreclosure cases at issue.

The Appellees characterize these excess charges as "minutiae", and

argue that, "regardless of whether any of these accusations [of improper

legal fees and expenses] have any merit", it is "entirely irrelevant" to

whether these overcharges violated the FDCPA.  (Brief for Appellee JER

(hereinafter "JER Br.") at 36.)

According to Appellees, what is relevant – in fact decisive – on the

question of whether the FDCPA covers the "transaction" from which these

improper legal fees and expenses arose is whether the goods and services

purchased were voluntarily "requested" by the homeowner.  Thus, though

Appellees do not challenge the unbroken line of cases finding that a

homeowner's purchase of water and sewer services is a "transaction" subject

to the FDCPA, they contend that New York City water and sewer purchases

are somehow different, because New York City residents do "not request

---

[1] Contrary to Appellees' suggestion, none of these improper charges have
ever been refunded to the Appellants.

municipal water and sewer services", but rather are required to purchase water and sewer services from the City "as an incident to property ownership." (Brief of NYCTL Trusts Defendant-Appellees (hereinafter "NYCTL Br.") at 24-26.)

However, the importance of this distinction is entirely of the Appellees' (and the lower court's) making. Congress imposed no limitation on the type of "transactions" which are subject to the FDCPA other that they must be "primarily for personal, family or household services", 15 U.S.C. §1692a, and the interpretation proffered by Appellees and the lower court is contrary to (i) the plain dictionary meaning of "transaction"; and (ii) how the FDCPA's use of the term has been interpreted by courts, including in Beggs v. Rossi, 145 F.3d 511 (2d Cir. 1998), where this Court held that a "transaction" is subject to the FDCPA if it "has arisen as a result of the rendition of a service or purchase of property or other item of value." Id. at 512.

The purchase of water and sewer services by New York City homeowners falls squarely within the well-settled definition of "transaction" as articulated in Beggs v. Rossi and other cases, and the fact that the City is the sole provider of such goods and services does not change that definition in any way. Even if Appellees' characterization of New York City's water

and sewer scheme is correct, they do not even attempt to explain why Congress would want debts arising from so-called "voluntary" purchases of household goods and services to be covered by the FDCPA, while the mandatory purchase of certain goods and services would not be covered.

Moreover, Appellees' attempt to defend the lower court's second basis for dismissal of the FDCPA claim is equally lacking case support. Appellees contend that the Appellants "misunderstood or ignored" the district court's reasoning in concluding that the FDCPA was inapplicable because the Trusts and JER collected the improper fees and expenses from Appellants while foreclosure actions which did not seek monetary damages were pending against them. (NYCTL Br. at 32) However, the import of the lower court's decision is clear: it immunized the Trusts and JER's *actual collection* of improper legal fees and expenses from the Appellants – conduct which would otherwise plainly violate §1692f(1) of the FDCPA – because those improper amounts were collected while a foreclosure action which did not seek personal liability against the Appellants was pending. Nothing in the FDCPA allows for such an illogical result, and every one of the five federal appellate courts which has considered the issue has held that the FDCPA clearly applies to debt collection actions taken during foreclosure. (See cases cited in Appellants' initial Brief at 45-48.)

Unable to justify the decision rendered by the lower court, each Appellee argues that the decision can be affirmed on several other grounds not considered below. However, as shown below, these alternative arguments for affirmance are equally devoid of merit.

## POINT I

### THE LOWER COURT'S DISMISSAL OF APPELLANTS' FDCPA CLAIMS SHOULD BE REVERSED

**1.     The Appellants' Purchases of Water and Sewer Services from the City Are Clearly "Transactions" Subject to the FDCPA**

As demonstrated in Appellants' initial brief, under well-settled law, including every case which has specifically considered this issue, the purchase of water and sewer services constitutes a "transaction" subject to the FDCPA. Appellees do not even attempt to argue that the lower court's interpretation of "transaction" is consistent with the plain meaning of the term, nor do they argue that that the water and sewer services fail to qualify as a "rendition of a service or purchase of property or other item of value" under <u>Beggs</u>. 145 F.3d at 512.

Appellees instead attempt to distinguish the cases which have uniformly found that the provision of water and sewer services constitutes an FDCPA "transaction" by contending that – since homeowners in New York are required to hook-up to the water and sewer system – the "mandatory"

nature of the purchase puts it outside the FDCPA's statutory framework. However, none of these decisions were premised on whether water and sewer fees were mandatory. In fact, the Third Circuit has twice found that the purchase of water services by households in Pittsburgh and Bethlehem, Pennsylvania constituted a "transaction" subject to the FDCPA despite the fact that Pennsylvania law required a property owner to pay "to pay a water service fee even though he has not connected his property to the municipal water system." Piper v. Portnoff Law Ass., Ltd., 396 F.3d 227, 233, n.8 (3rd Cir. 2005).

Moreover, as Appellants demonstrated in their initial brief, the contention that the purchase of goods and services must be "requested" to be a "transaction" subject to the FDCPA is also contrary to the many cases which have held that common charges levied by a condominium association constitute "transactions" subject to the FDCPA. Every federal appellate court presented with the issue has found that such charges constitute FDCPA "transactions" despite the fact that they are mandatorily imposed by a condominium association, are non-negotiable, and arise as an incident to property ownership. See, e.g., Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC, 698 F.3d 290 (6th Cir. 2012); Newman v. Boehm, Pearlstein

& Bright, Ltd., 119 F.3d 477 (7th Cir. 1997); Ladick v. Van Gemert, 146

F.3d 1205, 1206 (10th Cir. 1998).

The Third Circuit's decision in Piper comes closest to the reasoning in

the lower court's holding.  However, even there, the Court held that an

obligation arising from *metered* water usage – which is how Boyd's water

payment obligation was indisputably calculated – are "consensual

transactions" subject to the FDCPA:

> It is apparent from the [plaintiff's] account with the
> City that their service was metered in the normal
> fashion and that the amount of their obligation to pay
> was based on the amount of water they chose to use.
> The consensual nature of the transaction distinguishes
> the situation before us from tax assessments which
> Pollice held not to be debts within the meaning of the
> FDCPA.

Piper, 396 F.3d at 233, n. 8.   The Appellees' attempt to argue that the

court's holding in Piper is actually based on the fact that the use of water and

sewer services in Bethlehem "was voluntarily elected" simply ignores the

court's's express holding.[2]

_____

[2] As did the lower court, appellees also attempt to buttress the Court's
determination that purchases of water and sewer services in New York are
more analogous to property taxes than consumer debts because §1045-j(5) of
New York's Public Authorities Law permits water liens to be foreclosed "in
the same manner as a lien for . . . taxes." (JER Br. at 23.)  It is difficult to see
how this state statute is relevant to the question of the interpretation of the
term "transaction" in the FDCPA.  In any event, under §11-335 of the New
York City Administrative Code, which is the specific provision that gives

**2.** **Appellees' Collection of Unauthorized Fees and Expenses Is Not Insulated from FDCPA Scrutiny Merely Because it Occurred While Foreclosure Actions Which Did Not Seek <u>Personal Judgments Against Appellants Were Pending</u>**

Appellees do not dispute that every one of the five federal appellate courts which have considered this issue (the Third, Fourth, Fifth, Sixth and Eleventh) have determined that – contrary to the lower court's holding -- collection activities which take place while a foreclosure action is pending are covered by the FDCPA. Instead, Appellees cite a list of district court cases they compiled to the contrary, including many from these same appellate jurisdictions.[3]

---

the NYCTL Trusts the power to foreclose, such foreclosures shall be regulated by, among other things, the "rules of practice applicable to actions to foreclose *mortgages on real property*." Admin. Code 11-335 (emphasis added). There can be no dispute that debts arising from mortgages are "transactions" subject to the FDCPA.

[3] Moreover, JER's citation to <u>Kaltenbach v. Richards</u>, 464 F.3d 524 (5th Cir. 2006) and <u>Montgomery v. Huntington Bank</u>, 346 F.3d 693 (6th Cir. 2003) is even more disingenuous. JER completely misrepresents the holding of <u>Kaltenbach</u> when it cites the case as support for the conclusion that courts outside the Second Circuit have determined that enforcers of security interests are not "subject to any provisions of the FDCPA beyond §1692f(6)." (JER Br. at 26) In fact, the Court in <u>Kaltenbach</u> said just the opposite -- that "a party who satisfies § 1692a(6)'s general definition of a 'debt collector' is a debt collector *for the purposes of the entire FDCPA even when enforcing security interests.*" 464 F.3d at 529 (emphasis added). Moreover, Appellees should be well aware that in <u>Glazer v. Chase Home Finance, LLC</u>, 704 F.3d 453, 461 (6th Cir. 2013), the Sixth Circuit expressly limited its prior holding in <u>Montgomery</u> (a case involving non-judicial

Moreover, Appellees simply ignore that their position is also in complete conflict with the one taken by the federal Consumer Finance Protection Bureau ("the CFPB"), which filed an *amicus curiae* brief in Birster v. American Home Mortgage Servicing, Inc., 481 F. App'x 579, 583 (11th Cir. 2012), stating the government's position that the FDCPA unequivocally applies to actions taken during foreclosure proceedings:

> Nothing in the FDCPA's text suggests that attempting to obtain payment of a debt ceases to qualify as debt collection if it occurs in the context of foreclosure proceedings. . .
>
> Exempting debt collection from the Act's protections whenever it accompanies foreclosure proceedings would undermine this purpose by creating an "enormous loophole" allowing debt collectors to subject consumers to abusive collection practices whenever a "debt" happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt.

Brief of the Consumer Financial Protection Bureau as *Amicus Curiae* in Support of Plaintiffs-Appellants and Reversal, at 25, 27-28.[4] See Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1327, n.8 (7th Cir. 1997) (in which the Seventh Circuit held that the FTC's interpretation of

---

possession of a car) in broadly finding that collection activity undertaken during mortgage foreclosures is subject to the FDCPA.

[4] The CFPB Brief can be found at consumerfinance.gov/f/201112_CFPB_Birster-amicus-brief.pdf.

9

a provision of the FDCPA in an *amicus* brief must be acknowledged and given "due weight" in the interpretation of the statute).

> **3. Appellants Violated The FDCPA By Misrepresenting That Legal Expenses Were Due And Owing When The Statutory Prerequisites For The Imposition Of Such Fees Had Yet To Occur**

Appellees argue that the FDCPA "does not provide a mechanism for after-the-fact attacks" on "amounts that were paid in order to settle the foreclosures." (JER Br. at 36, 39.)   This defense suffers from multiple flaws.

First, it completely ignores §1692f(1) of the FDCPA, which prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law…." 15 U.S.C. §1692f(1) (emphasis added).  See McCollough v. Johnson, Rodenberg & Lauinger, 637 F.3d 939, 949 (9th Cir. 2011) ("the pursuit of unauthorized attorney's fees in a collection suit violates both §1692f(1) and 1692e(2) of the FDCPA".)

Second, there was no "settlement" here, much less any release of affirmative claims by either of these Appellants.[5]   See Golden Pacific

---

[5]  Appellant Joan Grant-Boyd did not sign the forbearance agreement executed by her husband Thomas Boyd in June 2002, and even if she did,

Bancorp v. FDIC, 273 F.3d 509, 515 (2d Cir. 2001) ("a release which

purports to excuse a party from responsibility for misconduct is subject to

the closest of judicial scrutiny . . . and will not be given effect unless it

contains an 'explicit, unequivocal statement of a present promise to release a

party from liability.'")  Rather, Appellees discontinued the foreclosure

actions, as they were statutorily required to under §11-332 of the

Administrative Code once Appellants paid off the amounts owed on the tax,

water and sewer liens. [6]  See LFG Realty Co. v. Bank of New York, 31

Misc.3d 1217a (Kings Co. Sup. Ct. 2011) (once a tax lien has been satisfied,

"the holder of the lien can no longer state a cause of action for foreclosure").

---

the "Waiver of Defenses" clause is, by its terms, limited to "defenses, counterclaims and setoffs" in "current or future foreclosure actions", not to claims raised in a separate legal action.   Indeed, interpreting this identical provision of the Trusts' form Forbearance Agreement in another case, the court in LFJ Realty Co. v. NYCTL 1996-1 Trust, 31 Misc.3d 1217a (Kings Co. Sup. Ct. 2011) found that a delinquent taxpayer's lawsuit against JER and the Trusts was not barred because "the waiver of counterclaims, setoffs and defenses is intended to expedite the foreclosure proceeding, rather than to bar [plaintiff] from obtaining a remedy in a separate action." Id., 31 Misc.3d at 1217a.

[6] Section 11-332 of the Administrative Code requires Appellees to provide "a certificate of discharge, certifying that the tax lien has been paid" upon a homeowner's payment of the principal and interest, a 5% surcharge, the costs of advertisements and notices, and "any other charges that are due and payable."  (§11-332(b))  Litigation disbursements, costs and expenses are not mentioned in §11-332.

Third, even if there had been settlement and release of the FDCPA claim or any other of the other affirmative claims here – which there was not – courts have made clear that while the FDCPA does not prohibit a creditor from offering a settlement, "it may not be deceitful in the presentation of that settlement offer, as [defendant] was in this case." Goswami v. American Collections Ent., Inc., 377 F.3d 488, 496 (5th Cir. 2004).[7] In that regard, Appellees rely on several cases dealing with the right of a creditor to demand attorneys' fees and expenses **authorized by contract** without court approval to argue that they did not violate the FDCPA by demanding and collecting the attorneys fees and expenses at issue from Appellants. (JER Br.. at p. 37) However -- unlike the cases upon which the Appellees rely – including Singer v. Pierce & Associates, 383 F.3d 596 (7th Cir. 2004), Fields v. Wilbur Law Firm, 383 F.3d 562 (7th Cir. 2004), or Oliphant v. Simboski, 2005 WL 75605 (D. Conn. 2005) -- the Appellants here did not have any preexisting contractual relationship with the Trusts or JER which authorized

---

[7] Indeed, courts routinely consider FDCPA claims brought by debtors after they have settled state debt collection litigation. Wolpoff v. Abramson, LLP, 321 F.3d 292, 307 (2d Cir. 2003) (addressing whether Appellees demanded improper legal fees from plaintiff in violation of the FDCPA in connection with the underlying lawsuit which was settled); Ogbin v. Fein, Such, et al., 2011 U.S. App. Lexis 3499 (3rd Cir. 2011) (unpublished) (same); Gionis v. Javitch, Block & Rathbone, 2007 U.S. App. Lexis 14054 (6th Cir. 2007) (same).

Appellees to collect attorneys' fees or expenses in the event of a payment default.

Rather, if Appellees had any right to recover attorneys' fees and expenses from Appellants, that right arose solely from Admin. Code §11-335 or CPLR § 8301.  None of these statutes permit a party to collect statutory disbursements or expenses before the entry of a judgment and an order specifically awarding such amounts.   In this case, neither of the underlying foreclosure actions involving Boyd and Jones resulted in any such judgment or order.

Under these circumstances, the Appellees had absolutely no right to claim the legal expenses at issue as being due and owing under the FDCPA. In <u>Shula v. Lawent</u>, 359 F.3d 489 (7th Cir. 2004), a debt collector filed a collection lawsuit against the plaintiff in Illinois state court.  After commencement of the action, plaintiff mailed the creditor a check for the amount allegedly owed.  Following plaintiff's payment, the debt collector mailed a letter to plaintiff demanding $52.73 in court costs, claiming that the consumer "owed this amount." <u>Id.</u> at 490.   While state law gave the debt collector the right to seek court costs, the debt collector never obtained a judgment or court order awarding such costs.   <u>Id</u> at 491.

13

Plaintiff in <u>Shula</u> sued under the FDCPA, and the Seventh Circuit held that the violations of the FDCPA were "blatant." <u>Id</u>. at 491. Because the award of court costs prior to the entry of judgment was discretionary, the Court held that it was:

> absurd to think that [the plaintiff] ever became obligated to pay court costs. And even when a case does go to judgment, so that the winning party has an entitlement to an award of costs rather than having to appeal to the judge's discretion, ***a judicial order is still necessary for a debt to arise.***

<u>Id</u>. at 491 (emphasis added).

Similarly, in <u>Veach v. Sheeks</u>, 316 F.3d 690 (7th Cir. 2003), the debt collector included attorneys' fees and court costs in a notice representing the purported amount owed at the time it filed a lawsuit against plaintiff, despite the fact that such fees and expenses had not yet been awarded. The Seventh Circuit again found that the debt collector had violated the FDCPA by including such court costs and fees as part of the amount allegedly due, because the "debt" claimed to be due and owing should advise the debtor:

> of what the ***obligation*** is, ***not*** what the final, worst-case scenario ***could be***… Since [plaintiff] cannot be held liable for… court costs or attorney's fees ***until*** there has been a judgment by a court they cannot be part of the 'remaining principal balance' of a claimed debt.

<u>Veach</u>, 316 F.3d at 693 (original emphasis).

Indeed, the district court in <u>Oliphant</u>, 2005 U.S. Dist LEXIS 5353, at *13 distinguished <u>Veach v. Sheeks</u> and <u>Shula</u> from the situation before it on this *exact* basis.  Thus, in distinguishing <u>Veach</u>, the <u>Oliphant</u> court said that, "[u]nlike the debtors in the cases she cites, Oliphant *agreed* to pay attorneys' fees and expenses associated with enforcing the note in a debt collection effort."  <u>Oliphant</u>, 2005 U.S. Dist LEXIS 5353, at *13 (emphasis in original).  <u>See also</u> <u>Oliphant</u>, 2005 U.S. Dist LEXIS 5353, *13 (plaintiff "cites <u>Shula</u> in support of her argument, but in fact, that case illustrates the distinction. Had it not been for the suit against <u>Shula</u> to collect the debt he owed the doctor, no claim for costs would have arisen. And of course there was no agreement by <u>Shula</u> to pay the costs.").[8]

**4.      Appellants Purchased Water and Sewer Services from the City, Not a Tax Lien, So Appellees' Attempt to Define the "Transaction" At Issue as one Involving Bundled <u>Tax, Water and Sewer Obligations Is Baseless</u>**

The Appellees suggest that the FDCPA "transaction" at issue was the City's sale to Appellees of the amount of taxes, water and sewer charges

---

[8]  Moreover,  even in cases where creditors have a contract with debtors authorizing them to collect "reasonable" legal fees and expenses, a debtor would still have an FDCPA claim if the amounts collected were unreasonable.  <u>Shapiro v. Riddle & Assoc.</u>, 240 F. Supp.2d 287 (S.D.N.Y. 2003), <u>aff'd,</u> 351 F.3d 63 (2d Cir. 2003).  Indeed, the Second Circuit decided the <u>Shapiro</u> case on that very basis, finding that "the $98 charge was reasonable in light of the undisputed evidence [of the law firm's] work…" <u>Shapiro</u>, 351 F.3d at 63.

owed by Jones and Boyd, and that since only about 20% of the amount owed by Boyd was for water and sewer charges, the "transaction" was not "primarily for personal, family or household purposes" under 15 U.S.C. §1692a(5). (JER Br. p. 18) However, as did the lower court, the Appellees simply ignore the fact that the "transactions" at issue from which Boyd's "debt" arose under §1692a(5) was not the City's sale of Boyd's tax, water and sewer debts, but rather arose from Boyd's original obligation to pay (i) for water and sewer services provided to her Brooklyn household, and (ii) property taxes. Cases have uniformly held that—for purposes of interpreting whether a debt was for "primarily personal, family or household purposes" subject to the FDCPA -- the nature of the "debt" is analyzed as of the date when the obligation first arose. See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC, 214 F.3d 872, 874-75 (7th Cir. 2000); Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC, 698 F.3d 290, 294 (6th Cir. 2012).

Moreover, the suggestion that the decision in Pollice v. National Tax Funding, L.P., 225 F.3d 379 (3rd Cir. 2000), can be distinguished because "the Third Circuit was able to separately consider property tax liens … and water and sewer liens" is both factually incorrect and legally irrelevant. Like here, the Third Circuit in Pollice addressed a situation in which an

16

entity sought to collect on separate tax, water and sewer debts which it had purchased from a municipality (the City of Pittsburgh).  Pollice, 225 F.3d at 385-86.   For purposes of determining whether the debts arose out of "transactions" which were subject to the FDCPA, the Court held that the point when the debts were assigned was irrelevant, and instead focused on when the separate tax and water and sewer obligations each initially arose. Pollice, 225 F.3d at 400 ("the homeowners' water and sewer obligations… constituted 'debts' from the time they initially were owed to the government entities, and they retained that status after their assignment" to the defendants); 225 F.3d at 402 ("although the tax claims were transferred to a private entity, the homeowners' obligation to pay… arose from the levying of taxes upon the ownership of property".)[9]

---

[9] In a variant of their argument that the Appellants' separate overdue property tax obligations doom their FDCPA claim, Appellees contend that, because the challenged attorney's fees and expenses would have been incurred in the foreclosure action even if there had been no overdue water and sewer charges, "the FDCPA should not be used to challenge the costs and attorney's fees *otherwise recoverable* in the tax lien foreclosure."  (JER Br. at 24.)  However, as the Magistrate Judge stated when concluding that "a reasonable fact finder could conclude that Defendants collected expenses that had *not in fact been incurred* by outside counsel",  (SPA 35 (emphasis added), the challenged legal fees and expenses collected from Appellants would **not** be "recoverable" even if the foreclosure action against them involved only property taxes.   Rather, the only difference is that the collection of such unauthorized legal fees and expenses would not be subject to the FDCPA.   Since the water and sewer purchases at issue are "debts"

5.      **The Fact that Appellees Sent Payoff Demands to Appellants' Counsel is Irrelevant to Whether Appellees Collected Amounts Which Were Prohibited by § 1692f(1)**

Citing to Kropelnicki v. Siegel, 290 F.3d 118 (2d Cir. 2002), Appellees contend that because Appellants were represented by attorneys in the sale (for Jones) and refinance (for Boyd) of their homes, Appellants are precluded from challenging the unauthorized legal fees and expenses collected from them under §1692f(1). (JER Br. at 33.)  However, that case did not deal with §1692f(1) or the actual collection of any unauthorized amounts.

Rather, Kropelnicki dealt with an alleged violation of §1692e(10) of the FDCPA, which prohibits the use of "any false representation or deceptive means to collect or attempt to collect a debt…"  290 F.3d at 126, n. 5. While this Court stated in *dicta* in Kropelnicki that such an alleged misrepresentation made to a consumer's attorney would not constitute a violation of §1692e(10), the Court concluded that "this is not an issue on which we need to rule today", and held that the FDCPA claim was precluded by the Rooker-Feldman doctrine.  290 F.3d at 128-29.[10]

---

under the FDCPA, Appellees' collection of unauthorized fees is clearly covered by the statute.

[10]  In contrast with the above point in Kropelnicki, appellate courts and the U.S. Supreme Court have directly held that a misrepresentation can be

In contrast to the conflicting treatment of alleged misrepresentations made to attorneys under §1692e of the FDCPA, every court which has addressed §1692f(1)'s separate prohibition against the "collection" of improper fees or expenses has held that it is irrelevant whether the payoff demand was communicated through the consumer-plaintiff's attorney.   In Allen v. LaSalle Bank, N.A., 629 F.3d 364 (3rd Cir. 2011), for example, the Third Circuit found that a payoff letter transmitted to a borrower's attorney which resulted in the payment of improper amounts by the borrower would violate §1692f(1), even though the "communication" was directed to the borrower's attorney:

> §1692f(1) prohibits "unfair or unconscionable means", ***regardless of the person to whom the communication was directed***….. [Section] 1692f(1) [] defines the collection of an unauthorized debt as a per se 'unfair or unconscionable' debt collection method.  The only inquiry under §1692f(1) is whether the amount collected was expressly authorized by the

---

actionable under §1692e, even if made to a debtor's attorney. See, e.g., Evory v. RJM Acquisitions Funding, LLC, 505 F.3d 769, 773 (7th Cir. 2007); Sayyed v. Wolproff & Abramson, 485 F.3d 226, 233 (4th Cir. 2007). In fact, in Jerman v. Carlisle, 130 S. Ct. 1605, 1609 (2010), the U.S. Supreme Court found that a law firm made a misrepresentation to a plaintiff in violation of §1692g of the FDCPA, despite the fact that the plaintiff was represented by a lawyer who represented her interests in the lawsuit. Jerman, 130 S. Ct. at 1609 ("[Plaintiff's] lawyer sent a letter disputing the debt, and Carlisle [the defendant] sought verification from Countrywide. When Countrywide acknowledged that [plaintiff] had, in fact, already paid the debt in full, Carlisle withdrew the foreclosure lawsuit").

> agreement creating the debt or permitted by law,
> an issue we leave for the District Court.… If the
> agreement does not expressly authorize or state
> law does not permit the amounts sought, [plaintiff]
> has stated a viable claim under §1692f(1).

629 F.3d at 368-69 (emphasis added). See also Ogbin v. Feib Such at C.,

2011 U.S. App. Lexis 3499 (3rd Cir. 2011) (unpublished) (same); Turner v.

J.V.D.B. & Assocs., Inc., 330 F.3d 991, 996 (7th Cir. 2003) ("Whether the

collection of a debt violates § 1692f(1) depends solely on two factors: (1)

whether the debt agreement explicitly authorizes the charge; or (2) whether

the charge is permitted by law.").

Moreover, the idea that the participation of an attorney immunizes the

collection of improper fees under §1692f(1) is also contrary to the position

of the Federal Trade Commission and the CFPB. After the defendants in the

Allen case filed a petition for certiorari in the U.S. Supreme Court, the

Supreme Court invited the Solicitor General to file an amicus brief

expressing the views of the United States on this issue. In December 2011,

the Solicitor General, FTC and CFPB did so, stating the government's

position that Allen was correctly decided:

> Petitioner asserts that "[w]hen a debtor is
> represented by counsel, concerns about abusive
> debt collection practices quickly evaporate. … But
> while an attorney may be better equipped than his
> client to see through a debt' collector's
> unscrupulous actions…the attorney is an imperfect

20

> filter, particularly with respect to falsehoods and misstatements that may not be immediately apparent.... The categorical rule that petitioner advocates, to the effect that a debt collector's communications to a consumer's attorney can *never* violate the FDCPA, therefore would disserve the Act's consumer-protection purposes.

(See Amicus brief annexed as an Appendix hereto, at 12.) Following the Solicitor General's submission in Allen, the Supreme Court denied certiorari. Fein, Such, Kahn & Sheppard, PC v. Allen, 132 S. Ct. 1141 (2012).

In sum, no plausible interpretation of the text in §1692f(1) supports the argument raised by Appellees – that debt collectors can collect improper fees which would otherwise violate §1692f(1) as long as the demand for such fees was made through a consumer's attorney.[11] Appellees fail to cite to a single case which even remotely supports such a novel holding, nor do they even attempt to demonstrate how such an exception can possibly be reconciled with §1692f(1)'s plain language.

---

[11] Among other things, such an interpretation would, in effect, make the consumer's lawyer the guarantor of the information contained in payoff demands sent by creditors, leading to a rash of legal malpractice lawsuits.

## POINT II
## <u>THE 1998-1 TRUST IS SUBJECT TO THE FDCPA</u>

In an argument never addressed by the lower court, Appellee 1998-1 Trust asserts that it is not subject to the FDCPA because it is a "creditor", not a "debt collector". (NYCTL Br. at 34) However, in <u>Pollice</u>, the Third Circuit found, under virtually identical circumstances, that the assignee of delinquent water and sewer charges sold by the City of Pittsburgh was a debt collector subject to the FDCPA. 225 F.3d at 403-04. As the Third Circuit stated:

> Courts have indicated that an assignee of an obligation is not a "debt collector" *if the obligation is not in default* at the time of the assignment; conversely, an assignee may be deemed a "debt collector" if the obligation is already in default when it is assigned.

<u>Pollice</u>, 225 F.3d at 403 (emphasis added). Other courts have routinely found that the assignee of a debt in default is subject to the FDCPA. <u>Zirrogiannis v. Dreambuilder Investments, LLC</u>, 2011 U.S. Dist. Lexis 48982 (E.D.N.Y. 2011) ("the overwhelming weight of authority… confirms… that a person who attempts to collect a debt acquired after default is a 'debt collector' under the FDCPA").[12]

---

[12] <u>See</u> <u>also</u> <u>Bailey v. Security Nat'l Servicing Corp.</u>, 154 F.3d 384, 387-88 (7th Cir. 1998); <u>Wadlington v. Credit Acceptance Corp.</u>, 76 F.3d 103, 106-07 (6th Cir. 1996).

In the present case, there can be little dispute that the water and sewer charges at issue were in default at the time of assignment, making the NYCTL Trusts debt collectors. Real property taxes and water and sewer charges on the Boyd property were listed as "delinquent" from January 1997. (A484-86) Real property taxes and water and sewer charges on the Jones property were listed as "delinquent" from July 1996. (A274). Indeed, due to their delinquency, the City could have foreclosed on these Tax Liens at the time they were assigned to the 1998-1 Trust. See Admin. Code, §§ 11-354, 11-404[a]; ISCA Enterprises v. City of New York, 77 N.Y.2d 688, 694, 569 N.Y.S.2d 927, 929 (N.Y. 1991).

Moreover, pursuant to the express terms of Admin. Code §11-320, the City of New York was required to provide written notice to each delinquent homeowner advising them of the delinquency, and "stat[ing] that *if default continues* to be made in payment of the amounts due on such property, the tax lien on such property shall be sold…." Admin. Code 11-320(b) (emphasis added). Clearly, then, by §11-320's own terms, the water and sewer charges were already in default before they were acquired by the Trusts, who became debt collectors of such liens. Kinel v. Sherman Acquisition LP, 2006 U.S. Dist. Lexis 97073, * 24-25 (S.D.N.Y. 2006)

("purchasers of defaulted debt are covered by the FDCPA, without regard to the level of their collection activity").[13]

Nor can there be any question that the Trusts, as assignees of tax liens owed to New York City, were debt collectors because they were "collecting or attempting to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §1692a(6). Again, numerous courts have found that – even though "nominally a creditor" -- the assignee or purchaser of a debt which has already been declared in default is a "debt collector" subject to the FDCPA. FTC v. Check Investors, Inc., 502 F.3d 159, 173 (7th Cir. 2007). Moreover, the 1998-1 Trust was an entity with no employees, owned and controlled by the City of New York, and required to be administered for its benefit. (A776, 793) Under the Trust Agreements, all income collected from the Tax Liens was required to "accrue and inure only to the benefit of the [City]." (A793) See Coleman v. Golkin, Bomback & Co., 562 F.2d 166, 168-169 (2d Cir. 1977) (a trust requires a

_____

[13] In fact, the Second Circuit has held that -- even if a debt was not actually in default at the time "default" was initially declared -- the FDCPA would be triggered, and "the status of the debt would not [be] alterable" for FDCPA purposes by any subsequent effort to correct or undo the default. Aliibrandi v. Fin. Outsourcing Serv. Inc., 333 F.3d 82, 87-88 (2d Cir. 2003) (a debt is in "default" for purposes of FDCPA once it is characterized that way to the consumer, and debt collector and creditor "had no ability to change that status through an agreement").

person with title to property "to deal with the property for the benefit of another person").

## **CONCLUSION**

Based on the foregoing, Appellants respectfully request that the lower court's dismissal of their FDCPA claims be reversed, and that this Court also direct the lower court to reinstate the state law claims that it dismissed without prejudice under 28 U.S.C. §1367(c)(3).

Dated: April 7, 2014

/s/ Paul Grobman
Paul Grobman
(Email: grobtown@aol.com)
555 Fifth Avenue, 17th FlooNew York, NY 10017
(212) 983-5880

Law Offices of Curtis V. Trinko, LLP
Curtis V. Trinko
(Email: ctrinko@trinko.com)
16 West 46th Street, 7th Floor
New York, New York 10036
(212) 490-9550

Kaufman & Kahn, LLP
Mark S. Kaufman
 (Email:
kaufman@kaufmankahn.com)
747 Third Avenue, 32nd Floor
New York, N.Y. 10017
(212) 293-5556

*Attorneys for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 5,203 words.

2.    This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

because this brief has been prepared in a proportionally spaced

typeface using Microsoft Word in Times New Roman, 14 point font.


Respectfully submitted,

<u>/s/ Paul Grobman</u>
PAUL GROBMAN
Attorney for Plaintiff-Appellant

555 Fifth Avenue, 17th floor
New York, New York 10017
(212) 983-5880

ADDENDUM

No. 10-1417

# In the Supreme Court of the United States

FEIN, SUCH, KAHN AND SHEPARD, PC, PETITIONER

*v.*

DOROTHY RHUE ALLEN

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT*

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

LEONARD J. KENNEDY
 *General Counsel*
ROBERTO J. GONZALEZ
 *Principal Deputy General
 Counsel*
DAVID M. GOSSETT
 *Assistant General Counsel*
PETER G. WILSON
 *Litigation Attorney
 Consumer Financial
 Protection Bureau
 Washington, D.C. 20036*

WILLARD K. TOM
 *General Counsel*
JOHN F. DALY
 *Deputy General Counsel for
 Litigation*
RUTHANNE M. DEUTSCH
 *Attorney
 Federal Trade Commission
 Washington, D.C. 20580*

DONALD B. VERRILLI, JR.
 *Solicitor General
 Counsel of Record*
TONY WEST
 *Assistant Attorney General*
MALCOLM L. STEWART
 *Deputy Solicitor General*
MELISSA ARBUS SHERRY
 *Assistant to the Solicitor
 General*
MICHAEL JAY SINGER
JONATHAN H. LEVY
 *Attorneys*
 *Department of Justice
 Washington, D.C. 20530-0001
 SupremeCtBriefs@usdoj.gov
 (202) 514-2217*

**QUESTION PRESENTED**

Whether communications from debt collectors to consumers' attorneys are categorically excluded from the coverage of Section 808(1) of the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq.*, which prohibits debt collectors from engaging in "[t]he collection of any amount * * * unless such amount is expressly authorized by the agreement creating the debt or permitted by law," 15 U.S.C. 1692f(1).

(I)

## TABLE OF CONTENTS

Page

Interest of the United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A. The court of appeals' decision is correct . . . . . . . . . . . . 8

    B. There is no square conflict among the
       courts of appeals on the question decided
       by the Third Circuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## TABLE OF AUTHORITIES

Cases:

*Chevron U.S.A. Inc.* v. *NRDC*, 467 U.S. 837 (1984) . . . . . 19

*Donohue* v. *Quick Collect, Inc.*, 592 F.3d 1027
   (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Evory* v. *RJM Acquisitions Funding L.L.C.*,
   505 F.3d 769 (7th Cir. 2007) . . . . . . . . . . . . . . . . . 14, 16, 19

*Guerrero* v. *RJM Acquisitions LLC*, 499 F.3d 926
   (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17, 18, 19

*Heintz* v. *Jenkins*, 514 U.S. 291 (1995) . . . . . . . . . . . . . . 2, 10

*Jerman* v. *Carlisle, McNellie, Rini, Kramer & Ulrich
   LPA*, 130 S. Ct. 1605 (2010) . . . . . . . . . . . . . . . . . . . . . . . 3

*Kropelnicki* v. *Siegel*, 290 F.3d 118 (2d Cir. 2002) . . . . 15, 16

*Lewis* v. *City of Chi.*, 130 S. Ct. 2191 (2010) . . . . . . . . . . . . 12

*Major League Baseball Players Ass'n* v. *Garvey*,
   532 U.S. 504 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Mertens* v. *Hewitt Assocs.*, 508 U.S. 248 (1993) . . . . . . . . . 13

*Muir* v. *Navy Fed. Credit Union*, 529 F.3d 1100
   (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV

Cases—Continued: Page

*National Cable & Telecomms. Ass'n* v. *Brand X Internet Servs.*, 545 U.S. 967 (2005) ............... 20

*Oncale* v. *Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) .............................. 13

*Panto* v. *Professional Bureau of Collections*, No. 10-4340, 2011 WL 843899 (D.N.J. Mar. 7, 2011) ................................... 18

*Russello* v. *United States*, 464 U.S. 16 (1983) .......... 10

*Sayyed* v. *Wolpoff & Abramson*, 485 F.3d 226 (4th Cir. 2007) ............................... 15, 16

*Stover* v. *Bishop, White, Marshall & Weibel, P.S.*, No. CV-11-0110, 2011 WL 4434919 (E.D. Wash. Sept. 22, 2011) ................................ 18

*VMI* v. *United States*, 508 U.S. 946 (1993) ............. 20

Statutes:

Consumer Credit Protection Act, 15 U.S.C. 1601 *et seq.* ........................................ 1

15 U.S.C. 1692 *et seq.* (Tit. VIII) ................ 1

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, Tit. X, 124 Stat. 1955 ................................... 3

§ 1062, 124 Stat. 2039 (12 U.S.C. 5582 (Supp. IV 2010)) ............................ 3

Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq.* ........................................ 1

15 U.S.C. 1692(e) ............................ 13

15 U.S.C. 1692a(2) .......................... 7, 9

15 U.S.C. 1692a(3) .......................... 11

Statutes—Continued:                                           Page

15 U.S.C. 1692a(6) ........................ 2, 9, 10
15 U.S.C. 1692b(6) ....................... 2, 10, 12
15 U.S.C. 1692c(a)(2) .................... 2, 10, 12
15 U.S.C. 1692c(b) ................... 2, 9, 10, 12
15 U.S.C. 1692c(d) ........................... 11
15 U.S.C. 1692d ............................. 5, 6
15 U.S.C. 1692d(1) ....................... 13, 14
15 U.S.C. 1692d(5) ........................... 13
15 U.S.C. 1692d-1692e ......................... 2
15 U.S.C. 1692e ..................... 5, 6, 16, 17, 18
15 U.S.C. 1692f ......................... passim
15 U.S.C. 1692f(1) (§ 808(1)) ............... passim
15 U.S.C. 1692g(b) ........................ 17, 18
15 U.S.C. 1692k(a) ............................ 2
15 U.S.C. 1692k(a)(1) ......................... 3
15 U.S.C. 1692k(a)(2) ......................... 3
15 U.S.C. 1692k(a)(3) ......................... 3
15 U.S.C. 1692k(b) ............................ 3
15 U.S.C. 1692k(c) ............................ 3
15 U.S.C. 1692k(e) (2006 & Supp. IV 2010) ........ 3
15 U.S.C. 1692l(a)-(c) (2006 & Supp. IV 2010) ... 3, 15
15 U.S.C. 1692l(d) (Supp. IV 2010) ............ 4, 19
12 U.S.C. 5481(12)(H) (Supp. IV 2010) .............. 4, 19
12 U.S.C. 5481(14) (Supp. IV 2010) ................. 4, 19
12 U.S.C. 5512(b) (Supp. IV 2010) .................. 4, 19

Miscellaneous:

75 Fed. Reg. 57,252 (Sept. 20, 2010) ................... 3

# In the Supreme Court of the United States

No. 10-1417

FEIN, SUCH, KAHN AND SHEPARD, PC, PETITIONER

*v.*

DOROTHY RHUE ALLEN

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT*

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

## INTEREST OF THE UNITED STATES

This brief is submitted in response to the order of this Court inviting the Solicitor General to express the views of the United States. In the view of the United States, the petition for a writ of certiorari should be denied.

## STATEMENT

1. The Fair Debt Collection Practices Act (FDCPA or Act), 15 U.S.C. 1692 *et seq.*, is a consumer-protection statute that was enacted in 1977, as Title VIII of the Consumer Credit Protection Act, 15 U.S.C. 1601 *et seq.* The Act regulates various practices pertaining to the collection of consumer debts by "debt collector[s]." The term "debt collector" is defined to include "any person * * * who regularly collects or attempts to collect, di-

(1)

2

rectly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6); see *Heintz* v. *Jenkins*, 514 U.S. 291, 292 (1995) (holding that a lawyer who "'regularly,' *through litigation*, tries to collect consumer debts" is a "debt collector" within the meaning of the FDCPA).

The FDCPA prohibits debt collectors from, *inter alia*, engaging in harassing or deceptive practices. 15 U.S.C. 1692d-1692e. It also prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. 1692f. That prohibition encompasses "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. 1692f(1). The FDCPA significantly limits debt collectors' ability to communicate about consumer debts with anyone not legitimately involved in the debt-collection and reporting process. 15 U.S.C. 1692c(b). The Act permits debt collectors to communicate with consumers' attorneys regarding the collection of debts, however, see *ibid.*, and it generally prohibits debt collectors from communicating directly with consumers who are represented by counsel, 15 U.S.C. 1692c(a)(2); cf. 15 U.S.C. 1692b(6) (generally prohibiting debt collectors from communicating with third persons to acquire location information about consumers, when consumers are represented by counsel).

The FDCPA authorizes both private and governmental enforcement actions. In general, "any debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person." 15 U.S.C. 1692k(a). A debt collector may not be held liable under the FDCPA, however, if it "shows by a pre-

ponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. 1692k(c); see *Jerman* v. *Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1611-1624 (2010). Nor can a debt collector be held liable if it acts "in good faith in conformity with" an appropriate governmental advisory opinion. 15 U.S.C. 1692k(e) (2006 & Supp. IV 2010).

A prevailing plaintiff in a private FDCPA suit is entitled to recover actual damages and attorney's fees. 15 U.S.C. 1692k(a)(1) and (3). The district court may also award "additional damages" subject to statutory caps. 15 U.S.C. 1692k(a)(2). In deciding whether to award additional damages, the court considers "the extent to which the debt collector's noncompliance was intentional," "the nature of such noncompliance," and several other factors. 15 U.S.C. 1692k(b).

The Federal Trade Commission (FTC), the Consumer Financial Protection Bureau (Bureau), and other federal agencies enforce the Act. 15 U.S.C. 1692*l*(a)-(c) (2006 & Supp. IV 2010). As relevant here, the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act), Pub. L. No. 111-203, Tit. X, 124 Stat. 1955, amended the FDCPA and established the Bureau, vesting it with significant authority relating to the Act.[1] The Bureau now has the authority to issue advisory opinions interpreting the Act. See 15 U.S.C. 1692k(e) (2006 & Supp. IV 2010). Congress also granted the Bureau authority to "prescribe rules with respect to the collection of debts by debt collectors"—a power no

---

[1] Title X of the Dodd-Frank Act became effective on July 21, 2011. Dodd-Frank Act § 1062, 124 Stat. 2039 (12 U.S.C. 5582 (Supp. IV 2010)); 75 Fed. Reg. 57,252 (Sept. 10, 2010).

4

agency previously had. 15 U.S.C. 1692*l*(d) (Supp. IV 2010); see 12 U.S.C. 5512(b) (Supp. IV 2010) (granting Bureau rulemaking authority for "Federal consumer financial laws"); 12 U.S.C. 5481(12)(H) and (14) (Supp. IV 2010) (defining "Federal consumer financial law" to include the FDCPA).

2. In 1976, respondent Dorothy Rhue Allen purchased a home with a 30-year mortgage. Pet. App. 3. On May 7, 2007, after respondent missed the final payment on her mortgage, petitioner Fein, Such, Kahn & Shepard, PC, a law firm, filed a foreclosure action against respondent in New Jersey state court on behalf of respondent's mortgage lender. *Id.* at 3, 17-18, 36.

On June 7, 2007, petitioner sent a letter to respondent's counsel at counsel's request. Pet. App. 3. The letter purported to provide a "[p]ayoff quote subject to audit and verification" for respondent's loan consisting of (a) $3425.31 in principal, interest, and other charges, payable to the bank servicing the loan, and (b) $2372.14 for "[a]ttorneys fees and costs," payable directly to petitioner. *Id.* at 85-86; see *id.* at 3, 18. The letter stated that it was "an attempt to collect a debt," and that "[a]ny and all information obtained w[ould] be used for that purpose." *Id.* at 86. Later that day, petitioner sent a second letter to respondent's counsel itemizing the $2372.14 in fees and costs that petitioner claimed it was owed. *Id.* at 87-88; see *id.* at 3, 18.

On June 26, 2007, respondent's counsel filed an answer in the state foreclosure action, as well as a class-action counterclaim and third-party complaint against petitioner, respondent's lender, and the bank servicing the mortgage. Pet. App. 3-4, 18, 60-84. Respondent alleged, *inter alia*, that petitioner's two letters had violated the FDCPA. *Id.* at 3-4, 18, 66-68. Petitioner filed

a motion to dismiss. *Id.* at 18. Before the court ruled on the motion, respondent's lender agreed to release the mortgage and dismiss the foreclosure action. *Id.* at 4, 18-19. The state court dismissed respondent's counter-claim and third-party complaint without prejudice. *Ibid.*

Respondent then filed a putative class action in fed-eral district court, again alleging, *inter alia*, that peti-tioner's two letters had violated the FDCPA. Pet. App. 4, 19, 34-59.[2] Respondent specifically alleged that peti-tioner had sought fees in excess of the amounts permit-ted by New Jersey court rules, and in excess of the costs actually incurred by petitioner, in violation of 15 U.S.C. 1692f and 1692f(1). Pet. App. 4, 38-40, 47-48. Respon-dent also alleged "more generally" that petitioner had "used 'unfair and unconscionable collection methods'" and had "engaged in unfair and/or deceptive acts and practices"—allegations that the district court construed as invoking the "'general application' provisions" of Sec-tions 1692d, 1692e, and 1692f. *Id.* at 19-20 (citation omit-ted); see *id.* at 47-48.

Petitioner moved to dismiss the FDCPA claims, ar-guing that "the letters it sent are not actionable under the FDCPA because they were sent only to [respond-ent's] attorney and not to [respondent] herself." Pet. App. 23. The district court rejected that contention, concluding that "the language of §§ 1692d, 1692e and 1692f does not support per se immunity for statements made to attorneys." *Id.* at 27. The court also concluded,

---

[2] Respondent's mortgage lender (LaSalle Bank, N.A.) and the ser-vicer of the loan (Cenlar Federal Savings Bank) were also named as de-fendants in the district court. Pet. App. 3-4 & nn.1, 2. Both defendants moved to dismiss respondent's complaint on grounds not addressed by the district court, *id.* at 4 n.2, 18 n.1, 32, and neither has filed a brief in this Court.

6

however, that "where a consumer's attorney is inter-
posed between the debt collector and the debtor,"
"statements made only to a debtor's attorney" should be
evaluated "from the perspective of the competent attor-
ney," and that the "competent attorney standard"
should apply regardless of whether the claim is brought
under Section 1692d, 1692e, or 1692f. *Id.* at 27-28 & n.6.
The court found that "each of the[] alleged overcharges
and deceptive statements would be readily recognized"
as such "by a competent attorney representing a debtor
in a foreclosure action"; that the overcharges and decep-
tive statements would not "in fact deceive" such a com-
petent attorney; and that the actions of respondent's
counsel in this case (filing a prompt counterclaim and
third-party complaint detailing the overcharges and de-
ceptive statements) confirmed the statements' lack of
deceptive potential. *Id.* at 30-31. Accordingly, the court
granted petitioner's motion to dismiss the FDCPA
claims. *Id.* at 31. The district court declined to exercise
supplemental jurisdiction over respondent's state-law
claims, *id.* at 32, and it therefore dismissed respondent's
complaint in its entirety, *id.* at 33.

3. The court of appeals vacated and remanded. Pet.
App. 1-12. At oral argument, respondent "conceded
\* \* \* that her FDCPA claims were predicated only
upon alleged violations of 15 U.S.C. § 1692f(1)." *Id.* at 4.
In light of that concession, the court identified the ques-
tion presented on appeal as "whether a communication
from a debt collector to a consumer's attorney is action-
able under the [FDCPA], 15 U.S.C. § 1692f(1)." *Id.* at 3;
see *id.* at 9.

The court of appeals answered that question in the
affirmative. The court explained that Section 1692f(1)
"prohibits 'unfair or unconscionable means,' regardless

7

of the person to whom the communication was directed."
Pet. App. 9. The court further explained that "the scope
of the FDCPA is broad," and that the term "communica-
tion" is defined "expansively" to include "indirect com-
munication[s] to the consumer," such as "[a] communica-
tion to a consumer's attorney." *Ibid.* (citing 15 U.S.C.
1692a(2)). The court concluded that "it would under-
mine the deterrent effect of" the FDCPA as a "strict
liability statute * * * [i]f an otherwise improper com-
munication" were to "escape FDCPA liability simply
because that communication was directed to a con-
sumer's attorney." *Id.* at 10.

The court of appeals also discussed the appropriate
standard for reviewing a claim under Section 1692f(1).
Pet. App. 10-11. The court noted that, in applying a
"competent attorney" standard, the district court had
not had the benefit of respondent's concession that she
was relying solely on Section 1692f(1), under which the
sole inquiry is "whether the amount collected was ex-
pressly authorized by the agreement creating the debt
or permitted by law." *Ibid.* The court of appeals re-
manded the case for further proceedings in the district
court, noting that it "express[ed] no opinion as to wheth-
er [respondent] has alleged a viable claim." *Id*. at 12.

## DISCUSSION

The court of appeals' decision is correct, and there is
no square conflict among the courts of appeals on the
question presented here. Although the ruling below is
in significant tension with a decision of the Ninth Cir-
cuit, that tension may be alleviated as the lower courts
and the expert agencies further consider the FDCPA's
application to communications to attorneys. The peti-
tion for a writ of certiorari therefore should be denied.

8

**A. The Court Of Appeals' Decision Is Correct**

Petitioner asks this Court to grant certiorari to decide "whether a communication from a debt collector to a debtor's attorney is actionable under the FDCPA." Pet. 5; see Pet. i, 9. Based on respondent's concession that she was relying solely on 15 U.S.C. 1692f(1), however, the court of appeals did not announce any rule governing the Act as a whole, but instead limited its holding to that specific FDCPA provision. See Pet. App. 9 (noting that "the issue here is whether § 1692f(1) governs communications from a debt collector to a consumer's attorney"); see also *id.* at 3, 4. The court of appeals correctly held that communications to a consumer's attorney can violate that provision.

1. Section 1692f sets forth a general prohibition, followed by a nonexclusive list of examples of conduct that would violate that general ban. As relevant here, Section 1692f states that

> [a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> > (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

9

15 U.S.C. 1692f.[3] There is no textual basis for limiting
Section 1692f(1) to the collection of unauthorized fees
directly from the consumer herself. Nor is there any
textual basis for excluding from Section 1692f(1)'s cover-
age communications to a consumer's attorney. On its
face, Section 1692f(1) broadly forbids the collection of
unauthorized fees "regardless of the person to whom the
communication was directed." Pet. App. 9.[4]

Other FDCPA provisions, by contrast, do exempt
communications with a consumer's attorney. Section
1692c(b), for example, generally prohibits debt collec-
tors from communicating with third parties "in connec-
tion with the collection of any debt." 15 U.S.C. 1692c(b).
That provision, however, expressly exempts communica-
tions with the consumer's "attorney." See *ibid.* (prohib-
iting such communications "with any person other than
the consumer, his attorney," and other enumerated per-
sons). "[W]here Congress includes particular language

---

[3] The court of appeals held that "collection" in Section 1692f(1) "in-
cludes attempted collection as well as actual collection." Pet. App. 8 n.4.
In a footnote in its reply brief, petitioner suggests that, contrary to the
court of appeals' decision, "Section 1692f(1) is limited to the actual col-
lection of prohibited amounts." Reply Br. 4 n.1. That issue, however,
is outside the scope of the question presented in the petition. Accord-
ingly, this brief assumes that the term "collection" in Section 1692f(1)
encompasses attempts to collect unauthorized fees. Cf. 15 U.S.C.
1692a(6) (defining the term "debt collector" to include a person who
"collects or attempts to collect" debts).

[4] As the court of appeals correctly observed, the FDCPA term "com-
munication" is defined to include "the conveying of information regard-
ing a debt directly *or indirectly* to any person through any medium."
Pet. App. 9 (quoting 15 U.S.C. 1692a(2)). Unlike other provisions of the
Act, Section 1692f does not require a "communication." See *Muir* v.
*Navy Fed. Credit Union*, 529 F.3d 1100, 1106-1107 (D.C. Cir. 2008).
There can be no dispute, however, that petitioner's letters to respon-
dent's counsel constituted a "communication" under the Act.

10

in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello* v. *United States*, 464 U.S. 16, 23 (1983) (brackets in original; citation omitted). If Section 1692f(1) is given its "ordinary English" meaning, *Heintz* v. *Jenkins*, 514 U.S. 291, 294 (1995), it prohibits the collection of unauthorized fees regardless of whether the debt collector communicates directly with the consumer or instead communicates with her attorney.[5]

The plain meaning of Section 1692f(1) is consistent with the general structure of the FDCPA, which recognizes that a debt collector may communicate with a consumer through the consumer's lawyer. The Act defines the term "debt collector" to include a person who "collects or attempts to collect" debts "indirectly." 15 U.S.C. 1692a(6). It permits communications with a consumer's attorney in connection with the collection of a debt. 15 U.S.C. 1692c(b). And it instructs debt collectors that they can generally communicate only with the attorneys of consumers who are represented by counsel. 15 U.S.C. 1692c(a)(2); see 15 U.S.C. 1692b(6).

Congress thus clearly contemplated that the collection of consumer debts would often involve communications to consumers' attorneys. Against that backdrop, Congress's failure to exempt communications to attorneys from Section 1692f(1) is particularly significant. Indeed, the FDCPA would be substantially self-defeating if compliance with the requirement that represented consumers be contacted through counsel could

---

[5] *Heintz* itself involved the same fact pattern at issue here, *i.e.*, the plaintiff alleged a violation of 15 U.S.C. 1692f(1) based on a letter that the debt collector had sent to the consumer's attorney. 514 U.S. at 293.

11

insulate debt collectors from all of the Act's other prohibitions.

2. Petitioner does not address the text of Section 1692f(1). In the court of appeals, petitioner conceded "that there is nothing in the FDCPA that explicitly exempts communications to an attorney." Pet. App. 9. Instead, petitioner contends that the Act includes an implied and categorical exemption for all communications between debt collectors and consumers' attorneys. That claim lacks merit.

a. Petitioner argues (Pet. 22-26) that the FDCPA distinguishes for various purposes between a consumer and her attorney. Petitioner cites two statutory definitions that make clear that a consumer's attorney is not a "consumer." See Pet. 23 (citing 15 U.S.C. 1692a(3), 1692c(d)).[6] There is no question, however, that petitioner was attempting to collect a debt from respondent when it sent two letters to her attorney; indeed, petitioner said as much in the first letter. Pet. App. 86 (stating that "[t]his communication is an attempt to collect a debt"); see *id.* at 85-86 (providing "[p]ayoff quote" for mortgage). The prohibition set forth in Section 1692f(1) is not limited to debt-collection methods that involve communications "to a consumer," let alone "directly to a consumer." Indeed, Section 1692f(1) does not contain the term "consumer" at all. If (as respondent alleges) the "amount[s]" that petitioner sought were neither "expressly authorized by the [mortgage] agreement" nor

---

[6] Section 1692a(3) provides that "[t]he term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. 1692a(3). Section 1692c(d) states that "[f]or the purpose of this section, the term 'consumer' includes the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator." 15 U.S.C. 1692c(d).

"permitted by law," 15 U.S.C. 1692f(1), the FDCPA's definitions of "consumer" do not cast doubt on Section 1692f(1)'s applicability here.

Petitioner also notes that the FDCPA permits debt collectors to communicate with consumers' attorneys about the collection of debts. Pet. 24-25 (citing 15 U.S.C. 1692b(6), 1692c(a)(2) and (b)). As discussed above, however, the fact that the FDCPA allows (and sometimes requires) debt collectors to communicate directly with consumers' attorneys does not suggest that, when a debt collector does so, the FDCPA provides no further protections. By sending the two letters to respondent's attorney rather than directly to respondent, petitioner satisfied the FDCPA requirement (15 U.S.C. 1692c(a)(2)) that debt collectors contact represented consumers through their counsel. Petitioner's compliance with that requirement, however, did not absolve it of its obligation to obey the Act's other substantive provisions. Neither the fact that petitioner communicated with respondent's counsel, nor the tenor of that communication, forms the basis for the asserted violation of Section 1692f(1).

b. Petitioner also argues (Pet. 26-31) that applying the FDCPA to communications with a consumer's attorney would not further Congress's purposes in enacting the statute. That argument is wrong for two reasons.

First, where (as here) the statutory language is clear, the Court will not "rewrite the statute so that it covers only what [it] think[s] * * * Congress really intended." *Lewis* v. *City of Chi.*, 130 S. Ct. 2191, 2200 (2010). "[S]tatutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we

13

are governed." *Oncale* v. *Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998); see *Mertens* v. *Hewitt Assocs.*, 508 U.S. 248, 261 (1993) ("[V]ague notions of a statute's 'basic purpose' are * * * inadequate to over-come the words of its text regarding the *specific* issue under consideration."). Absent any textual basis for reading Section 1692f(1) to exclude communications to attorneys, petitioner's contention that such an approach would serve Congress's purposes is simply beside the point.

Second, the plain text of Section 1692f(1)—which unambiguously prohibits the collection of unauthorized fees through communications with a consumer's attor-ney—is entirely consistent with the overall purposes of the FDCPA. Contrary to petitioner's suggestion (Pet. 26-27), consumers are not the only intended beneficia-ries of the Act's protections. For example, the FDCPA prohibits debt collectors from using or threatening to use "violence or other criminal means to harm the physi-cal person, reputation, or property of *any person*," and from "[c]ausing a telephone to ring or engaging *any per-son* in telephone conversation repeatedly or continu-ously with intent to annoy, abuse, or harass *any person* at the called number." 15 U.S.C. 1692d(1) and (5) (em-phases added). The Act also serves in part to level the playing field among debt collectors by "insur[ing] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvan-taged." 15 U.S.C. 1692(e).

In any event, reading Section 1692f(1) as written to encompass communications to consumers' attorneys *does* protect the consumer, and does so more effectively than the reading petitioner proposes. Petitioner asserts that "[w]hen a debtor is represented by counsel, con-

14

cerns about abusive debt collection practices * * * 'quickly evaporate.'" Pet. 27 (quoting *Guerrero* v. *RJM Acquisitions LLC*, 499 F.3d 926, 939 (9th Cir. 2007)). But while an attorney may be better equipped than his client to see through a debt collector's unscrupulous actions, and may be more impervious to certain abusive practices, the attorney is an imperfect filter, particularly with respect to falsehoods and misstatements that may not be immediately apparent. Cf. *Evory* v. *RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007) (noting that "[a] false claim of fact in a dunning letter may be as difficult for a lawyer to see through as a consumer"). And even when an attorney successfully thwarts a debt collector's efforts to collect unauthorized amounts, the attorney's services typically will take time and cost the consumer money. See *Guerrero*, 499 F.3d at 945 (W. Fletcher, J., concurring in part and dissenting in part). The categorical rule that petitioner advocates, to the effect that a debt collector's communications to a consumer's attorney can *never* violate the FDCPA, therefore would disserve the Act's consumer-protection purposes.

Petitioner contends (Pet. 29) that the court of appeals' decision will deter good-faith settlement negotiations between debt collectors and attorneys for consumers. But the blanket exemption that petitioner advocates would extend well beyond such good-faith efforts and would encompass intentional wrongdoing and even violent acts. Under petitioner's approach, for example, a debt collector could physically attack (or threaten to attack) a consumer's lawyer, or threaten to harm the lawyer's reputation, without violating the FDCPA. See 15 U.S.C. 1692d(1). And, in petitioner's view, a debt collector would be insulated from liability under Section

15

1692f(1) even if it demanded fees that it knew to be un-
authorized, so long as it presented its demand to the con-
sumer's attorney rather than to the consumer herself.

Acceptance of that theory would not simply hinder
consumers' own efforts to obtain redress through pri-
vate civil actions. Under the FDCPA, the enforcement
authority of the FTC, the Bureau, and other federal
agencies depends on the existence of a violation of the
Act. See 15 U.S.C. 1692*l*(a)-(c) (2006 & Supp. IV 2010).
If communications with consumers' attorneys were cate-
gorically outside the Act's purview, no matter how egre-
gious the conduct, the FDCPA would not authorize gov-
ernmental enforcement measures.

### B. There Is No Square Conflict Among The Courts Of Appeals On The Question Decided By The Third Circuit

Petitioner asserts that a "three-way circuit conflict"
exists on the question whether "a communication from
a debt collector to a debtor's attorney [is] actionable
under the FDCPA." Pet. 9. That argument rests on a
misunderstanding of the court of appeals' decision. The
court did not announce a rule that governs all provisions
of the FDCPA, but instead confined its analysis to Sec-
tion 1692f(1). With respect to the question whether a
communication to an attorney can violate that provision,
no square circuit conflict exists.

1. No court of appeals has held that the collection of
unauthorized fees through communications to consum-
ers' attorneys is categorically outside Section 1692f(1)'s
purview. And every court of appeals to decide the ques-
tion has held that communications to attorneys can vio-
late Section 1692f.[7] In *Sayyed* v. *Wolpoff & Abramson*,

---

[7] In *Kropelnicki* v. *Siegel*, 290 F.3d 118 (2d Cir. 2002), the court of
appeals suggested in dicta "that alleged misrepresentations to *attor-*

16

485 F.3d 226 (2007), the Fourth Circuit rejected the argument that "FDCPA liability cannot attach to communications made by a debt collection attorney to a debtor's counsel, rather than to the debtor." *Id.* at 232-233. Although the court did not engage in any substantive analysis of the particular FDCPA provisions at issue, the plaintiffs in that case had alleged violations of Sections 1692e and 1692f, including Section 1692f(1). *Id.* at 228-229, 234, 235 n.2. And in *Evory*, the Seventh Circuit concluded that "communications to lawyers are subject to sections 1692d through 1692f." 505 F.3d at 772-774. As the court explained, none of those sections "designate any class of persons, such as lawyers, who can be abused, misled, etc., by debt collectors with impunity." *Id.* at 773.[8]

---

*neys* for putative debtors cannot constitute violations of the FDCPA." *Id.* at 127; see Pet. 10 n.2. The court stated that "[w]here an attorney is interposed as an intermediary between a debt collector and a consumer," the attorney "will protect the consumer from a debt collector's fraudulent or harassing behavior." *Kropelnicki*, 290 F.3d at 128. The Second Circuit expressly declined, however, to "rule" on the issue. *Ibid.*

[8] Petitioner contends that it would have prevailed in the Seventh Circuit "because [r]espondent's counsel was not deceived by the alleged inaccuracies in the Payoff Letters." Pet. 15; see Pet. 14-15. In discussing Section 1692e, the Seventh Circuit in *Evory* distinguished between "deceptive" and "misleading" representations, on the one hand, and "false" representations, on the other. 505 F.3d at 772, 774-775; see 15 U.S.C. 1692e (prohibiting "false, deceptive, or misleading representation[s]"). With respect to the former, the court concluded that, when a communication to an attorney is alleged to violate the FDCPA, "a representation by a debt collector that would be unlikely to deceive a competent lawyer * * * should not be actionable." *Evory*, 505 F.3d at 775. With respect to the latter, the court suggested that a lawyer might be as unable as his client to "see through" false representations, and it concluded that such misrepresentations "would be actionable whether made to the consumer directly, or indirectly through his lawyer." *Ibid.*

17

Petitioner also contends (Pet. 11-14) that the decision below conflicts with the Ninth Circuit's ruling in *Guerrero*. In *Guerrero*, the court considered FDCPA claims brought under Sections 1692e and 1692g(b). 499 F.3d at 935-936 (describing "the provisions at issue here"); cf. *id.* at 934 (suggesting that district court construed plaintiff's claim to include a violation of Section 1692f). The court concluded that the debt collector in that case "did not violate [Sections] 1692g(b) or 1692e" because "communications directed solely to a debtor's attorney are not actionable under the Act." *Id.* at 934.

Because *Guerrero* did not involve a claim under Section 1692f(1), and the court of appeals in this case limited its holding to that provision, no square conflict between the two decisions exists. Nevertheless, the Ninth Circuit's analysis in *Guerrero* is in significant tension with the decision below. In concluding that communications directed solely at a consumer's attorney are not actionable under Sections 1692e and 1692g(b), the Ninth Circuit used broad language that literally encompassed the entire FDCPA. *E.g.*, *Guerrero*, 499 F.3d at 936 ("[W]e hold that communications directed only to a debtor's attorney, and unaccompanied by any threat to contact the debtor, are not actionable under the Act.")

Because the Seventh Circuit did not discuss the application of its "competent lawyer" standard to claims brought under Section 1692f(1), the Third Circuit's refusal to apply that standard to respondent's Section 1692f(1) claim (see Pet. App. 10-11) did not create a circuit conflict. In any event, the only question presented in the certiorari petition is whether communications to attorneys are actionable under the FDCPA *at all*. See Pet. i. The pertinent Seventh Circuit decisions have clearly answered that question in the affirmative. Any dispute concerning the precise standard to be used in determining *which* communications to attorneys violate the FDCPA generally, or Section 1692f(1) in particular, is outside the question presented.

18

(footnote omitted); *id.* at 939 (holding "that when the debt collector * * * communicates exclusively with an attorney hired to represent the debtor in the matter, the Act's strictures no longer apply to those communications"); accord *Donohue* v. *Quick Collect, Inc.*, 592 F.3d 1027, 1032 (9th Cir. 2010) (stating that the court in *Guerrero* "concluded that communications sent only to a debtor's attorney are not actionable under the FDCPA").

More significantly, much of the *Guerrero* court's reasoning would appear to apply equally to alleged violations of Section 1692f.[9] For example, the court did not identify any language specific to Section 1692e that would exempt communications to attorneys from that prohibition. *Guerrero*, 499 F.3d at 936. And while the *Guerrero* court's textual analysis was largely limited to Section 1692g(b)'s repeated references to a "consumer" —a term that is not present in Section 1692f(1)—the court extended its reasoning to include Section 1692e. See *id.* at 936, 937 n.6 (rejecting dissent's argument that its reasoning is limited to Section 1692g(b) and should not extend to Section 1692e). The Ninth Circuit's reference to the inferences to be drawn from "[t]he statute as a whole" (*id.* at 935), and its assertion that "Congress did not view attorneys as susceptible to the abuses that spurred the need for the legislation" (*ibid.*), likewise

---

[9] At least one district court in the Ninth Circuit has expressly applied the holding in *Guerrero* to an alleged violation of Section 1692f. See *Stover* v. *Bishop, White, Marshall & Weibel, P.S.*, No. CV-11-0110, 2011 WL 4434919, at *3 (E.D. Wash. Sept. 22, 2011). And at least one district court in the Third Circuit has expressly applied the holding in this case to an alleged violation of Section 1692g(b). See *Panto* v. *Professional Bureau of Collections*, No. 10-4340, 2011 WL 843899, at *6 (D.N.J. Mar. 7, 2011).

19

suggest that the court's analysis was not limited to the specific FDCPA provisions at issue in the case.

There is consequently significant tension between the Ninth Circuit's decision in *Guerrero* and the decision below. That tension, however, is relatively recent and shallow. Many courts of appeals have not yet addressed the FDCPA's application to communications to attorneys. Cf. *Hemmingsen* v. *Messerli & Kramer, P.A.*, No. 11-2029 (8th Cir. argued Dec. 15, 2011). And since the Ninth Circuit's decision in *Guerrero*, two other courts of appeals have held that communications to consumers' attorneys can violate the FDCPA. See *Evory*, 505 F.3d at 773-774; Pet. App. 7-10. Seven of the nine district court decisions on which the *Guerrero* court relied, moreover, were issued by district courts within the Seventh Circuit, and those rulings have since been superseded by *Evory*. Compare *Evory*, 505 F.3d at 772, 777-778, with *Guerrero*, 499 F.3d at 936 & n.5. In light of those facts, and because no square circuit conflict exists regarding the proper application of Section 1692f(1), this Court's review would be premature at the present time.

2. Two other considerations reinforce the conclusion that this Court's review is currently unwarranted. First, the Bureau now has statutory authority to prescribe rules under the FDCPA, see 15 U.S.C. 1692*l*(d) (Supp. IV 2010); see also 12 U.S.C. 5512(b) and 5481(12)(H) and (14) (Supp. IV 2010), and the Bureau has informed us that it regards the promulgation of such rules as a regulatory priority. If the Bureau issues a rule that addresses the question presented here, its interpretation of Section 1692f(1) will be entitled to deference under the principles set forth in *Chevron U.S.A. Inc.* v. *NRDC*, 467 U.S. 837, 842-845 (1984). Such regu-

lations, moreover, would provide a basis for the courts of appeals to revisit any contrary holdings in their own prior decisions. See *National Cable & Telecomms. Ass'n* v. *Brand X Internet Servs.*, 545 U.S. 967, 982-985 (2005).

Second, this case is currently in an interlocutory posture, and this Court "generally await[s] final judgment in the lower courts before exercising [its] certiorari jurisdiction." *VMI* v. *United States*, 508 U.S. 946, 946 (1993) (Scalia, J., respecting denial of certiorari). The court of appeals remanded this case to the district court to consider, *inter alia*, "alternative grounds for dismissal set forth in the motions to dismiss" filed by petitioner and the other defendants. Pet. App. 12. The court emphasized that it "express[ed] no opinion as to whether [respondent] has alleged a viable claim." *Ibid.* If petitioner prevails on those alternative grounds, this Court's resolution of the question presented will be unnecessary. If respondent ultimately prevails in her suit, petitioner will be able to raise its current claim, together with any other claims that may arise on remand, in a single petition for a writ of certiorari. See *Major League Baseball Players Ass'n* v. *Garvey*, 532 U.S. 504, 508 n.1 (2001) (per curiam).

21

## CONCLUSION

The petition for a writ of certiorari should be denied.

Respectfully submitted.

LEONARD J. KENNEDY
*General Counsel*

ROBERTO J. GONZALEZ
*Principal Deputy General
Counsel*

DAVID M. GOSSETT
*Assistant General Counsel*

PETER G. WILSON
*Litigation Attorney
Consumer Financial
Protection Bureau*

WILLARD K. TOM
*General Counsel*

JOHN F. DALY
*Deputy General Counsel for
Litigation*

RUTHANNE M. DEUTSCH
*Attorney
Federal Trade Commission*

DECEMBER 2011

DONALD B. VERRILLI, JR.
*Solicitor General*

TONY WEST
*Assistant Attorney General*

MALCOLM L. STEWART
*Deputy Solicitor General*

MELISSA ARBUS SHERRY
*Assistant to the Solicitor
General*

MICHAEL JAY SINGER
JONATHAN H. LEVY
*Attorneys*